### F. D. BAINS V. THE STATE.

No. 9856.   Delivered February 10, 1926.

**Murder—Evidence—Held Sufficient.**

The record is before us without any objection to the charge of the court, or the admission or rejection of testimony on the trial. The only question for review is the sufficiency of the evidence, to support the verdict, with the death penalty. We cannot say that the jury was unwarranted in concluding that the killing was actuated by malice. The state's evidence shows a wanton killing, in the absence of any circumstances mitigating or justifying it, and must be affirmed. See Mikel v. State, 43 Tex. Crim. Rep. 615 and other cases cited.

Appeal from the District Court of Bexar County.   Tried below before the Hon. W. S. Anderson, Judge.

Appeal from a conviction of murder, penalty assessed at death.

The opinion states the case.

No brief filed for appellant.

*C. M. Chambers,* District Attorney; *L. W. Schlesinger,* Assistant District Attorney; *Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Appellant is under conviction for the murder of his wife, Eva May Bains, his punishment being fixed at death.

The record shows no objections to the manner in which the court submitted the case to the jury, neither is complaint made of the reception or exclusion of evidence. Only one special charge was requested which the court gave. The only question for review is the sufficiency of the evidence to support the judgment. All parties were negroes.

Appellant and his wife had been separated some three weeks prior to the night of the killing. They had lived with his wife's father and mother, with whom also lived another married sister and her husband. Appellant was not satisfied with this arrangement. About three weeks before the homicide he went to room at Melvina Samples' house where he had been staying before his marriage. His wife remained with her parents. Appellant seemed to think the entire family had not treated him fairly in some way, but this feeling was more particularly directed towards his mother-in-law. During the separation appellant had told Melvina Samples if his wife did not come and live with him he would kill her. This threat was treated lightly by Melvina, who thought he was joking about it. About four o'clock in the afternoon before the killing that night he asked Melvina for some oil and was oiling his pistol. About two weeks before the killing and while he and his wife were not living together appellant told his brother-in-law if he ever met his wife on the street with another man he would empty his gun into her, and if he did not have his gun he would cut her head off with a knife and throw the head at her body. On the night of the killing appellant went to the home of his wife's family where she was. He remained for some time, talking to different members of the family and engaging in conversation with his wife. The subject of conversation between him and his wife is not shown from the record. In the room with them were his wife's mother and sister. Appellant kissed his wife, whereupon the mother said, "Look at them now, they are kissing, why don't you all make up and do what you are going to do and quit your foolishness?" Appellant seemed to take offense and fly into a rage because of this apparently friendly remark of his mother-in-law, and in a loud voice asked, "What have you go to do with it?" immediately drew his pistol, shot his wife dead, and then turned the pistol on her mother, killing her also. Other members of the family then engaged in a scuffle with appellant and succeeded in disarming him. He fled from the scene but was apprehended late the same night some fifteen miles from where the killing took place. Appellant testified that without fault on his part a concerted attack was made upon him by members of his wife's family, and that he was firing indiscriminately in an effort to protect his life and with no desire or purpose to kill any one particularly, and with no intent to kill anybody. He was not supported by any witness present. The jury rejected his version of the matter.

We cannot say the jury was unwarranted in concluding that the killing was actuated by malice, or unauthorized in the infliction of the death penalty. The state's evidence shows a wanton killing in the absence of circumstances mitigating or justifying it. The facts are similar to those shown in Mikel v. State, 43 Tex. Crim. Rep. 615, 68 S. W. 512. Upon the general principles of motive and malice, see Rea v. State, 77 Tex. Crim. Rep. 565, 179 S. W. 706; Snowberger v. State, 58 Tex. Crim. Rep. 530, 126 S. W. 878; Wynn v. State, 59 Tex. Crim. Rep. 117, 127 S. W. 197.

The judgment is affirmed.

*Affirmed.*